**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARPENTERS COMBINED FUNDS, INC., | ) | |
| by James R. Klein, Administrator, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1681 |
| | ) | Judge Nora Barry Fischer |
| | ) | |
| KELLY SYSTEMS, INC. and NOVINGER | ) | |
| GROUP, INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

This is an ERISA matter wherein Plaintiff Carpenters Combined Funds, Inc., ("Plaintiff or "Fund"), the Pittsburgh-based administrator and collection agent of non-party Greater Pennsylvania Regional Council of Carpenters Union, ("Union"), seeks to enforce the collective bargaining obligations of non-party and Harrisburg-based Novinger's Inc., ("Novinger's"), against two related entities named as Defendants, Kelly Systems, Inc., ("Kelly"), and Novinger Group, Inc., ("NGI"), also located in Harrisburg. (Docket No. 1). Presently before the Court is a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) or to Dismiss Count III of Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants, (Docket Nos. 6, 7), Plaintiff's Brief in Opposition thereto, (Docket No. 12), and Defendants' Reply, (Docket No. 16). The parties' filings include various evidentiary submissions, consisting of: excerpts of certain collective bargaining agreements; addenda thereto; other documents; and affidavits of party representatives. (Docket Nos. 6, 7, 12, 16). For the following reasons, Defendants'

1

Motion [6] is granted to the extent that they seek this matter to be transferred to the United States District Court for the Middle District of Pennsylvania. [1]

## II. BACKGROUND

This case arises out of two successive collective bargaining agreements between the Union and Novinger's for the periods of 2008-2012 and 2012-2015, (collectively, "CBAs" or "2008 CBA", "2012 CBA"), which cover various aspects of the relationship between Novinger's and Union carpenters working in counties located within the Middle and Eastern Districts of Pennsylvania.[2] (*See* Pl. Exs. "A" and "B" to Complaint, Docket Nos. 1-1; 1-2). The CBAs were negotiated in the Harrisburg area, with the Keystone Contractors Association acting as the bargaining agent for all employers, including Novinger's. (*Id.*; Docket No. 6-1 at ¶¶ 2-3, 7-8). Novinger's maintains its headquarters in Harrisburg and at the time of the negotiations, the Union was likewise based in Harrisburg. (*Id.*). Novinger's President, James Novinger, executed the Joinder agreement on behalf of the company, binding Novinger's to the CBAs as an "Employer." (Pl. Ex. "C" to Complaint, Docket No. 1-3). Among other things, the CBAs

---

[1]    As noted, Defendants also move to dismiss Count III of Plaintiff's Complaint. (Docket Nos. 6, 7). Because this Court finds that the interests of justice require a transfer to the U.S. District Court for the Middle District of Pennsylvania, it is in the interests of comity for the transferee court to resolve the dispute regarding the plausibility of Plaintiff's alternative theory set forth in its Count III whereby it seeks to hold Defendants liable as "joint employers" with Novinger's.

[2]    The CBAs state the following in a preface under the heading titled "Agreement,"

> [CBA is entered into for t]he purpose of establishing hours of work; conditions under which employees shall work for the Employer; and to facilitate without resort to strikes, slowdowns, lockouts, peaceful adjustment of grievances and disputes which may from time to time arise between the Employers and carpenters engaged in building construction work in all of the following counties in Pennsylvania:

> Adams, Berks, Bradford, Columbia, Cumberland, Dauphin, Juniata, Lancaster, Lebanon, Lycoming, Montour, Northumberland, Perry, Schuylkill, Snyder, Sullivan (except Red Rock Air Base), Tioga, Union, York, the lower part of Luzerne County, in Carbon County it would include Banks, Lausanne, Lehigh, Packer, Kidder Township and that part of Penn Forest Township north of Route 903.

(*See* 2008 CBA; 2012 CBA). None of these counties are located within the Western District of Pennsylvania.

outline the obligations of Novinger's to make certain monthly fringe benefit contributions to the Union including, but not limited to amounts for pension and medical benefits. (Docket No. 1 at ¶ 11). The 2008 CBA and 2012 CBA contain identical provisions stating the following:

> During the term of this contract and any extension thereof, the employer shall pay into the appropriate benefit fund as agreed to by the respective Boards of Trustees. Medical plan payments may go to the Greater Pennsylvania Carpenters' Medical Plan or the Building Trades Health and Welfare Fund. Pension payments will go to the Greater Pennsylvania Carpenters' Pension Fund or the Keystone Carpenters' Pension Plan. Annuity payments will go to the Greater Pennsylvania Carpenters' Annuity and Savings Fund. All of the terms and provisions of the Agreements and Declarations of Trust creating the above said Funds are hereby accepted by the parties hereto and copies of said Agreements and Declarations of Trust are incorporated by reference in this Contract and made a part hereof.

(*See* 2008 CBA at § XV; 2012 CBA at § XV). Both CBAs contain broad arbitration provisions setting forth dispute resolution procedures governing all types of disputes between employers, the Union and any employees.[3] (*See* 2008 CBA at § XIII; 2012 CBA at § XIII ("Any and all disputes, complaints, controversies or grievances whatsoever between the Union or any employees and the Employer, which directly or indirectly arise under, out of, or in connection with or in any manner relate to this Agreement, or the breach thereof, or the acts, conduct or relations between the Parties shall be adjusted as follows: ….")). These agreements lack any forum selection clauses. (*See generally* 2008 CBA; 2012 CBA).

Neither the Union nor Novinger's are parties to this lawsuit. (Docket No. 1). Rather, this case is between Plaintiff, which administers the employee benefit funds on behalf of the Union and serves as its agent to collect alleged delinquent benefits, and two other entities that are owned by James Novinger but are not parties to the CBAs: NGI and Kelly. (*Id.*). Plaintiff is

---

[3]     As the Court describes in the discussion section below, the arbitration provisions have not been invoked by Plaintiff which is attempting to rely on Trust documents in an effort to avoid the arbitration requirements. *See* § III, *supra*.

headquartered in Pittsburgh. (*Id.*). The Harrisburg-based Union recently was a party to a merger with additional unions from other areas, including the Western Pennsylvania regional carpenters union to form the Keystone Mountain Lakes Regional Council of Carpenters. (Docket No. 12-4 at ¶ 9).

To be clear, Plaintiff neither claims that Novinger's violated the CBAs nor asserts that Novinger's is delinquent in making necessary fringe benefit contributions to the Fund. (Docket No. 1). Instead, Plaintiff avers that, from September 2010 to the present, parent company NGI diverted drywall contracting work from its union subsidiary, Novinger's, to non-union subsidiary, Kelly, purportedly for the purpose of avoiding Novinger's collective bargaining obligations to make necessary contributions for fringe benefits to the Union for the benefit of its members. (*Id.*). Plaintiff seeks to enforce Novinger's obligations to pay fringe benefits against NGI and Kelly under three alternative theories, including that: all three entities constitute a "single employer"; NGI and Kelly are the "alter egos" of Novinger's; and/or, all three entities constitute a "joint employer." (*Id.*). Plaintiff contends that the estimated principal delinquency exceeds two million dollars and that it is also pursuing interest, contractual liquidated damages plus attorneys' fees and costs. (*Id.* at ¶ 33).

NGI and Kelly deny liability and will defend this case vigorously through an expected non-jury trial. (Docket Nos. 6, 7). Notably, NGI has been operating Novinger's and Kelly as union and non-union drywall contracting companies, respectively, for decades and the non-union companies, NGI and Kelly, have never made any contributions to the Fund for fringe benefits or otherwise. (Docket No. 6-1 at ¶¶ 6-10). Hence, there is no established relationship between NGI, Kelly and Plaintiff or the Union for that matter. It also appears that the Union previously pursued an alter ego theory against NGI and Kelly before the National Labor Relations Board

several years ago but such claim was denied at the administrative level.  (*Id.* at ¶ 11; Docket No. 6-2).

On behalf of Defendants, James Novinger declares that all of the potential evidence in this case related to NGI and Kelly is located at their Harrisburg offices and any potential testimony concerning those records and/or their business practices would necessarily come from employees located in that region.  (Docket No. 6-1 at ¶¶ 6-28).  He adds that any evidence from contracting jobs for third parties performed by those entities would also be related to construction sites in the Middle and Eastern Districts of Pennsylvania because that is where those companies do business.  (*Id.* at ¶¶ 26-27).  He further states that each of the three entities operate independently; refuting the allegations in Plaintiff's Complaint suggesting that the corporations operate, in effect, as one entity, without adhering to the necessary corporate formalities.  (*Id.* at ¶¶ 10-11, 21).  Mr. Novinger also acknowledges that if his companies are found liable in this lawsuit and/or another claim against it for withdrawal liability in Civil Action No. 14-956 seeking a judgment in excess of $1.9 million, that all three companies would be bankrupt.[4] (Docket No. 6-1 at ¶ 29).

Plaintiff's affiant, James Klein, suggests that its auditors intend to obtain the financial records of NGI and Kelly during discovery and then examine those records in the Pittsburgh area

---

[4]      Mr. Novinger declares that:

　　　[h]aving to litigate this case in Pittsburgh would cause severe financial hardship to Kelly and to NGI, whose continued existence depends upon their ability to defeat Plaintiff's claims.  The downturn in the economy that occurred in 2008 very nearly put all of my companies out of business.  Both Novinger's and Kelly had to borrow large sums of money on lines of credit to continue operating.  Both companies remain marginal and each carries a significant amount of debt.  Despite being the controlling shareholder and President of Novinger's, Kelly and NGI, I have not received a salary from the companies in several years.
　　　　　　　　　　　…
The Fund recently filed a summary judgment motion [in the case docketed at No. 14-956] seeking a judgment in excess of 1.9 million dollars, which would bankrupt all three companies.

(Docket No. 6-1 at ¶ 28).

where the auditors maintain offices. (Docket No. 12-4 at ¶ 24 ("Following discovery, these auditors will have knowledge regarding the work performed by Novinger's, as well as work performed by Kelly Systems and Novinger Group")). Klein additionally declares that Plaintiff's own records are maintained in this area, without specifying what records, if any, it has as to NGI and Kelly.[5] (*Id.* at ¶26). Plaintiff further notes that it would call one of its executives as a possible witness, apparently to testify as to general topics akin to a 30(b)(6) deponent. (*Id.* at ¶ 21). These potential witnesses for Plaintiff – an executive and auditors who have not yet started their assignments – are located in Pittsburgh. (*Id.* at ¶¶ 25-27).

More broadly, the interested stakeholders in the case all work primarily in the Middle District of Pennsylvania, although the territory covered by the CBAs includes a small portion of the Commonwealth situated in the Eastern District of Pennsylvania. (*See* 2008 CBA; 2012 CBA). These interested individuals include the Union's members in the Local 214 and Local 645, each of whom are third party beneficiaries of the CBAs and have a financial stake in this lawsuit. (*Id.*). Further, all of the employees of NGI and Kelly work in that area. (Docket No. 6-1 at ¶¶ 26, 27). As noted, third parties which have contracted with Kelly and/or NGI for carpentry services likewise do business in that area. (*Id.* at ¶ 15). Again, Plaintiff's entire fringe benefits claim relies upon the value of the carpentry services that non-union employees of NGI and Kelly allegedly performed for these third party contractors and all such work occurred outside of this District. (*See* Docket No. 1).

---

[5]     Instead, Klein declares that "the Funds maintain participants' individual work histories, calculate eligibility for benefits, send out benefit checks, receive applications for benefits, as well as other tasks regarding plan administration." (Docket No. 12-4 at ¶ 7). Of course, the records concerning the "Funds' participants" necessarily refers to those collected concerning members of the Union who are participants in the Funds and not to any records of the non-union employees of NGI and Kelly that Plaintiff admits it needs to obtain from those entities during discovery in this litigation.

It is not debatable that this case could have been filed in the U.S. District Court for the Middle District of Pennsylvania as venue is authorized in ERISA matters "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. §1132(e)(2). NGI and Kelly seek to transfer the case there; Plaintiff opposes the transfer and argues that venue should remain here. (Docket Nos. 6, 7, 12). The pending Motion has been fully briefed by the parties and is now ripe for disposition.

III. LEGAL STANDARD

Defendants move to transfer this case under 28 U.S.C. § 1404(a) which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). It is well established that Defendants bear the burden of proof to demonstrate that a discretionary transfer of venue is appropriate and that this Court retains "broad discretion" to transfer venue when justice so requires. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995); *see also Ogundoju v. Attorney General of U.S.*, 390 F. App'x 134, n.2 (3d Cir. 2010).

To determine whether to grant a motion to transfer venue under § 1404(a), the District Court weighs both the private and public interests set forth by the United States Court of Appeals for the Third Circuit in *Jumara*. *See Jumara*, 55 F.3d at 879-80. The relevant private interests include: (1) each party's forum preference; (2) where the claims arose; (3) the convenience of the parties; (4) the convenience of the witnesses; and (5) the location of the books and records. *Id.* The cited public interests include: (1) the enforceability of the judgment; (2) practical considerations of expediting trial and reducing costs; (3) administrative difficulties in the two fora due to court congestion; (4) the local interest in deciding local controversies; (5) public

policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *Id.* at 879–80.  As noted above, "[t]he burden of establishing the need for transfer still rests with the movant," and "the plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879.

IV. DISCUSSION

Naturally, the parties dispute the application of the *Jumara* factors to this case with Plaintiff taking the view that its preferred venue in this Court should prevail to which Defendants counter that the interests of justice will be better served if this case is transferred to the U.S. District Court for the Middle District of Pennsylvania, Harrisburg Division.  (*See* Docket Nos. 6, 7, 12).  Before addressing the relevant *Jumara* factors, which the Court believes fully support the requested transfer, the Court turns to a threshold question raised by Plaintiff concerning the import of the Supreme Court's decision in *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for West. Dist. of Tex.*, 134 S.Ct. 568, 581-582 (2013).

To this end, Plaintiff argues that, in light of *Atlantic Marine*, a forum selection clause set forth in Trust documents allegedly incorporated by reference into the CBAs should be given presumptive effect such that the private *Jumara* factors should weigh wholly in its favor.  *See* (Docket No. 12); *Atlantic Marine*, 134 S. Ct. at 582 ("a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests … [and] a district court may consider arguments about public-interest factors only.").  NGI and Kelly contend that they were not signatories to the CBAs and that the cited forum selection clause should not be enforced against them or given such controlling weight in this case.  (Docket Nos. 6, 7).  This Court agrees with Defendants' position for several reasons.

Initially, many subsequent courts have recognized that the Supreme Court's seemingly absolute pronouncements in *Atlantic Marine* concerning the presumptive enforcement of forum selection clauses must be interpreted in the proper factual context of that case. In this regard, the Supreme Court explicitly notes that "[o]ur analysis presupposes a contractually valid forum-selection clause," 134 S. Ct. at 581, n.5, such that this Court must determine in the first instance if the challenged clause is valid prior to upsetting the traditional calculus under *Jumara*. *See Untitled 3, LLC v. Apex Energy Grp., LLC*, No. 2:15-CV-164, 2015 WL 2169770, at *3 (W.D. Pa. May 8, 2015) ("The issue before the Court is twofold: First, is the forum selection clause valid? Second, if it is valid, should the Court enforce the clause and transfer the case…?") (Hornak, J.). Courts have also recognized that *Atlantic Marine* involved a mandatory forum selection clause designating an exclusive venue between the parties to the agreement rather than a permissive forum selection clause merely indicating that the parties consented to venue in a particular jurisdiction, and have limited the reach of *Atlantic Marine* to cases involving mandatory forum selection clauses. *See Dawes v. Publish Am. LLLP*, 563 F. App'x 117, 118 (3d Cir. 2014), *cert. denied sub nom.*, *Dawes v. Publish Am. LLP*, 135 S. Ct. 1159, 190 L. Ed. 2d 917 (2015) (citations omitted) ("If the contract does not contain a mandatory forum selection clause, then a forum non conveniens analysis applies."). But, this case is not a straightforward one involving a mandatory forum selection clause between two parties set forth in a single contract. (*See* Docket Nos. 1, 6-7, 12). Instead, Plaintiff relies on forum selection clauses which were allegedly incorporated by reference into the CBAs and seeks to enforce them against Defendants which are neither parties to the CBAs nor signatories to same. (Docket No. 6). Needless to say, a careful analysis of the clauses Plaintiff seeks to enforce against Defendants as well as the underlying CBAs is required.

Like the contracts that contain them, forum selection clauses are interpreted with reference to state law. Pennsylvania law will be applied here.[6]  Pennsylvania rules of contract interpretation require the court to "ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 590–591, 777 A.2d 418 (Pa. 2001). Such intent is to be determined from reading the entire agreement as a whole and "when a writing is clear and unequivocal, its meaning must be determined by its contents alone." *Murphy*, 565 Pa. at 591, 777 A.2d 418 (citations omitted).  If the terms of the agreement are unambiguous, the plain meaning of the terms of the agreement will be enforced. *Id.* If the terms are ambiguous, the agreement will be construed against the drafter. *See Gallagher v. Fidelcor, Inc*., 441 Pa. Super. 223, 657 A.2d 31 (Pa. Super. Ct. 1995) (citation omitted). "The practice of incorporating documents by reference has long been established in Pennsylvania." *Cable & Assocs. Ins. Agency, Inc. v. AMS Servs., Inc.*, 102 F. App'x 234, 237 (3d Cir. 2004).  "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Bent Glass Design v. Scienstry, Inc.*, No. CIV.A. 13-4282, 2014 WL 550548, at *10 (E.D. Pa. Feb. 12, 2014) (quoting *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003)).

The 2008 CBA and 2012 CBA contain virtually identical[7] provisions stating the following:

ARTICLE XV

---

[6]     All actions in this case took place in Pennsylvania and arise out of the CBAs governing the relationships between the Union, its members and employers (including Novinger's) within the Commonwealth.  (Docket No. 1 and attachments).  The instant venue dispute tasks the Court with deciding whether to keep the case in this venue or to transfer it to the Middle District.  (*See* Docket Nos. 6, 12, 16).  No other jurisdiction has any interest in this case. Thus, Pennsylvania law will be applied.

[7]     It appears that the provision in the 2008 CBA utilizes the word "may" in one instance where the 2012 CBA says "will."  *Compare 2008 CBA* with *2012 CBA*.  This slight change in verbiage from the permissive "may" to the mandatory "will" has no bearing on the outcome of this decision.

*Fringe Benefits and Employee Deductions*

> During the term of this contract and any extension thereof, the employer shall pay into the appropriate benefit fund as agreed to by the respective Boards of Trustees. Medical plan payments may go to the Greater Pennsylvania Carpenters' Medical Plan or the Building Trades Health and Welfare Fund. **Pension plan payments may go to the Greater Pennsylvania Carpenters' Pension Fund or the Keystone Carpenters' Pension Plan.** Annuity payments will go to the Greater Pennsylvania Carpenters' Annuity and Savings Fund. **All of the terms and provisions of the Agreements and Declarations of Trust creating the above said Funds are hereby accepted by the parties hereto and copies of said Agreements and Declarations of Trust are incorporated by reference in this Contract and made a part hereof.**

(2008 CBA at § XV; 2012 CBA at § XV (emphases added)). The 2008 CBA is effective from June 1, 2008 to May 31, 2012. (2008 CBA at § I). The 2012 CBA is effective from June 1, 2012 to May 31, 2015. (2012 CBA at § I).

Plaintiff claims that this contractual language suffices to incorporate the following clause into the CBAs:

> The Employer waives any venue requirement and agrees that Allegheny County, Pennsylvania shall be the proper venue for bringing any action for collection of Employer contributions.

(Pl. Exs. A; B). For support, Klein states that true and accurate copies of the relevant Fund and Trust documents were provided to the Court as Plaintiff's Exhibits A and B. "Exhibit A" is an excerpt of a document titled Greater Pennsylvania Carpenters' Pension Fund, which indicates that it was "Amended and Restated … **Effective as of January 1, 2014**." (Docket No. 12-1 (emphasis added)). Therefore, this document was created years after both CBAs were executed and could not have been "accepted by the parties" with "copies" of same being "incorporated into" the CBAs at the time of execution of either agreement. (2008 CBA § XV; 2012 CBA § XV). Yet, there is no language in § XV of the 2008 CBA or 2012 CBA purporting to

incorporate future documents or later amendments to existing documents into those agreements. (2008 CBA at § XV; 2012 CBA at § XV). Further, the second document presented by Plaintiff marked as "Exhibit B" is titled Carpenters' Pension Fund **of Western Pennsylvania**, Agreement and Declaration of Trust and notes that it is "Restated as of January 1, 1994 With Amendments Incorporated through January 1998." (Docket No. 12-2 (emphasis added)). Hence, this document is not the "Greater Pennsylvania Carpenters' Pension Fund" or the "Keystone Carpenters' Pension Plan" which are clearly referenced in the CBAs as documents that were incorporated into the broader agreements.[8] (2008 CBA at § XV; 2012 CBA at § XV).

As noted by the Court's emphases, neither document provided by Plaintiff in this litigation is clearly referenced in the CBAs; hence, the terms of same – including the forum selection clauses – cannot be incorporated therein and made part of the CBAs. *See Bent Glass Design*, 2014 WL 55048, at *10 ("Here, incorporation is barred because there was no clear reference to the Terms and Conditions in the contract, and the incorporation of the Terms would result in surprise and hardship."). The CBAs also provide that the Union and Novinger's agreed that any amendments to same would be set forth in writing and executed by them and no such writings stating that future documents and/or that the Western Pennsylvania Plans are binding have been provided. (2008 CBA at § XXV; 2012 CBA at § XXV).

In light of this analysis, the Court finds that Plaintiff has failed to demonstrate that the provisions it is seeking to enforce against NGI and Kelly were incorporated into the CBAs between the Union and Novinger's.[9] *Cf. Bent Glass Design*, 2014 WL 55048, at *10. As such,

---

[8]     The Court again notes that Klein states elsewhere in his affidavit that the Harrisburg-based Greater Pennsylvania Carpenters' Union recently merged with the Western Pennsylvania regional contractors union to form the Keystone Mountain Lakes Regional Council of Carpenters. (Docket No. 12-4 at ¶ 9).

[9]     Even if the documents were properly incorporated into the CBAs, the Court believes that the correct interpretation of the language used in the forum selection clauses is permissive rather than mandatory. The clauses simply do not set forth a sole and exclusive venue in this District (or Allegheny County). Rather, the language merely indicates that the parties to that document – whoever they are – agreed that Allegheny County was the proper

the Court need not continue to determine for the purposes of the transfer motion whether non-signatories NGI and Kelly are bound by the CBAs.[10]   Accordingly, since there is no forum selection clause incorporated into the operative contracts, the Court will analyze the *Jumara* factors utilizing the traditional approach, starting with the private factors.   *See Dawes*, 563 F. App'x at 118.

### A.  Private Factors

It is this Court's opinion that a fair weighing of the private *Jumara* factors result in favor of a transfer of this matter to the U.S. District Court for the Middle District of Pennsylvania.  As to the first factor, the opposing parties have their reasons for preferring to litigate in their respective venues but neither party's forum choice, by itself, forcefully outweighs the other. Relatedly, Plaintiff's choice of forum is given some weight but it is also not lightly disturbed by a transfer because the Union (which maintains an office in Lebanon, Pennsylvania) and all of its members (the third party beneficiaries of the CBAs) are located in the Middle District. However, the liability theories that have been advanced in this case against Harrisburg-based NGI and Kelly convince the Court that the claims arose, if at all, in the Middle District such that the second factor strongly favors transfer.  *See Armstrong Dev. Props., Inc. v. Ellison*, 2014 WL 1452322 at *6 (W.D. Pa. Apr. 14, 2014) (finding that transfer was warranted on private factors

---

venue and that the employer waived any requirement that venue be in a particular place.  But, Defendants concede that venue in this District is proper based on their transfer motion having been filed under 28 U.S.C. § 1404(a) seeking a transfer for convenience of the parties rather than 28 U.S.C. § 1406 which is utilized when venue is improper.  (*See* Docket Nos. 6, 7).

[10]      The Court notes that the Carpenters' Pension Fund of Western Pennsylvania, Agreement and Declaration of Trust purports to override the CBAs' arbitration and procedural dispute resolution procedures.  However, the provided excerpt of the post-dated Greater Pennsylvania Carpenters' Fund document does not contain any language permitting the parties to avoid the arbitration provision.  It stands to reason that if Plaintiff wants to enforce the CBAs against NGI and Kelly, it may have to do so in arbitration, absent the presentation of proof to the contrary. Whether the arbitration provisions should be enforced is beyond the scope of the instant dispute but the transferee court may wish to address this matter with the parties.

because the primary focus of plaintiff's claims concerned the occurrence of alleged tortious events in other Districts).

While this case involves ERISA claims, it is not the typical case involving an individual claimant challenging a benefits determination by the administrator or a perfunctory collection action by an administrator seeking to recover delinquent payments from an employer. *See e.g.*, *Schurich v. Principal Fin. Grp.*, 2005 WL 1229725, at *3 (M.D. Pa. May 24, 2005) (denying motion to transfer venue as improper in individual benefits case); *Sims v. Am. Postal Workers Acc. Ben. Ass'n*, 2012 WL 761237, at *3, n.6 (W.D. Pa. Mar. 7, 2012) (internal citations omitted) (Hornak, J) ("While there is some authority for according greater judicial reluctance to the transfer of an ERISA action, courts have transferred such actions where the § 1404(a) and case law factors have strongly supported transfer, particularly when the operative facts of the case have no material connection to the district in which the action was filed."). The plaintiffs in those types of matters are granted deference to their home venues in ERISA proceedings because courts reason that it may be unfair to require them to litigate in a foreign venue seeking to collect money to which they are very likely entitled. *See id*. But, this is not one of those cases.[11]

Plaintiff has not sued Novinger's for failing to pay delinquent benefits due under the CBAs; rather, Plaintiff is seeking to hold NGI and Kelly responsible for paying $2 million in benefits into the Funds on a contested theory that NGI was diverting drywall work from Novinger's to Kelly from September 2010 until the present. (*See* Docket No. 1). These are novel legal theories, the pursuit of which Plaintiff should expect may need to be litigated in a

---

[11]    The Court further notes that this case is distinct from *Erwood v. LINA*, Civ. A. No. 14-1284, 2015 WL 143892 (W.D. Pa. Jan. 12, 2015) (Kelly, M.J.), which was adopted as the opinion of this Court, Docket No. 52, (W.D. Pa. Feb. 12, 2015). In *Erwood*, a motion to transfer the case to the Northern District of Georgia was denied because the defendant administrator, LINA, operates here and had denied the out-of-state individual plaintiff's claim for benefits in its Pittsburgh office. *Id*. Hence, the suit was properly filed in the District where LINA resides and does business and the prevailing *Jumara* factors did not favor a transfer of that particular lawsuit. *Id*.

different venue due to the simple fact that all of the alleged nefarious actions by NGI and Kelly necessarily occurred within the Middle District. *See e.g., Dist. 65 Pension Plan, et al. v. De Marco Cal. Fabrics, Inc.*, et al., 2007 WL 2066386 (D.N.J. Jul. 13, 2007) (citing and quoting cases) (Court *sua sponte* transferring ERISA withdrawal liability action brought by pension plan from Fund administrators' location in New Jersey to Southern District of New York where events took place). Further, the underlying CBAs govern the working relationship between the Union and the employer (Novinger's) in that area and such agreements were negotiated and executed there. (*See* 2008 CBA; 2012 CBA; Docket No. 6-1 at ¶¶ 2-3, 7-8). It is also undisputed that the three Novinger's entities have been operating with union (Novinger's) and non-union (Kelly) contracting companies for decades and NGI and Kelly have never made any contributions to the Funds, despite the long-standing relationship between Novinger's and the Union. (Docket No. 6-1 at ¶¶ 6-10).

Plaintiff also maintains that Defendants are in a better position to absorb the costs attendant to litigating in the out-of-town venue because it is a non-profit entity and Defendants (and Novinger's) are collectively the largest drywall contractors in the Commonwealth. (*See* Docket No. 12). But, Plaintiff's concerns about the costs of litigation are not well-taken in light of the fact that it seeks $2 million in damages as well as attorneys' fees and costs in this litigation, such that the costs of which it complains may be recoverable if it is successful in this endeavor. (*See* Docket No. 1). Of course, the counter-point offered by James Novinger is that a damage award of that magnitude may force his "marginal" companies into bankruptcy, which he would undoubtedly initiate in the Middle District. (Docket No. 6-1 at ¶ 28). The Court further recognizes that earlier this year an arbitrator determined that Plaintiff's claims seeking withdrawal liability against Novinger's, NGI and Kelly were "frivolous" and assessed attorneys'

fees and costs against Plaintiff due to its behavior in that litigation.[12] (Docket No. 7-1). Despite this ruling, Plaintiff continues to press forward with its withdrawal liability case filed at Civil Action No. 14-956 and apparently is attempting to continue to litigate the arbitration.[13] *See generally* Civ. A. No. 14-956. These actions – separate and apart from the instant suit – undercut the alleged need for the Court to defer to Plaintiff's forum preference to the detriment of Defendants for reasons set forth in the decisions upon which Plaintiff relies noting policy considerations preserving the balance of the Funds. *Cf. Dist. 65 Pension Plan*, 2007 WL 2066386 at *2 (citing and quoting omitted cases) (holding that "a finding that an ERISA case may never be transferred under § 1404(a) if it is brought in the forum where the plan is administered … is simply not the law … and thus it appearing that the Court is not bound by the Plan's choice of its home venue.").

The third and fourth factors, which consider the convenience of the parties and witnesses, *see Jumara*, 55 F.3d at 879-80, also favor a transfer because all of the parties and non-parties

---

[12]    Arbitrator Susan Grody Ruben, Esq. sets forth the basis for the assessment of attorneys' fees and costs against the Fund in footnote 1 of the "Arbitrator's Ruling on Motion No. 2." Arbitrator Ruben notes, among things, that:

> Here, the Fund's determination that Novinger's had incurred partial withdrawal liability was frivolous, unreasonable, without foundation, and should not have been issued. After leaving Novinger's with no choice but to initiate arbitration, the Fund then engaged in dilatory conduct that has needlessly lengthened and increased the expense of this proceeding.
>
> It is clear Novinger's has incurred no partial withdrawal liability. All of the facts necessary to make this determination have been known to the Fund since July 26, 2013.
>
> …
>
> In spite of this information, the Fund issued a determination it knew had no basis in fact or law, and then the Fund engaged in dilatory tactics during this proceeding in an effort to salvage that unfounded determination by attempting, unsuccessfully and without factual support, to change it. This is precisely the type of conduct that warrants an award of costs and fees.

(Docket No. 7-1 at 17-18).

[13]    The Court notes that this case and the case filed at Civ. A. No. 14-956 was not deemed related by Plaintiff on its Civil Cover Sheet. (Docket No. 1-4). Further, this Court has conferred with the Hon. Cathy Bissoon as to the relationship between the cases and the Judges have collectively concluded that the matters are neither related nor should they be consolidated. Hence, the presence of another, unrelated case in this District – where cross-motions for summary judgment are now pending – bears little on the overall transfer analysis.

have some connection to Harrisburg while the Pittsburgh connection to this case is attenuated, at best. (*See* 2008 CBA; 2012 CBA; Docket Nos. 6-1, 12-4). In addition to the Harrisburg ties that have already been mentioned, Plaintiff, the Fund administrator, contracted with the Union based in Harrisburg and admits that it needs to obtain discovery from Defendants, in Harrisburg, prior to its auditors becoming familiar with the case and relevant documents, at which point they will be able to testify. (*See* Docket No. 12-4 at ¶¶ 24-27). So, the location of these auditors in Pittsburgh is given little weight. In contrast, third party witnesses called by the Defendants regarding contracting jobs that have been completed by Kelly and NGI and from which the alleged liability in this case flows are located in central Pennsylvania. (Docket No. 6-1 at ¶¶ 15, 26, 27). While none of these witnesses are *per se* unavailable for trial; they would all be inconvenienced by having to appear here for trial or otherwise. Plaintiff states in its papers that it has already agreed to go to Harrisburg to take necessary depositions and points out that litigating in this adjacent District would only be minimally inconvenient to Defendants, undermining its own position that it is somehow inconvenienced by the transfer when clearly it has fewer prospective witnesses to offer and will build its case based on information in Defendants' possession. (*See* Docket No. 12). As noted, Plaintiff admits that the books and records that will be at issue in this case are not located in this District; but they can be produced electronically, rendering this fifth factor generally neutral, except as noted above as it affects witness location. *See Armstrong*, 2014 WL 1452322 at *6.

After careful consideration of the parties' respective arguments and the facts of record, the Court overrules Plaintiff's objections to the Defendants' transfer Motion and holds that the private factors are all either neutral or weigh in favor of a transfer to the Middle District. *See Jumara*, 55 F.3d at 879.

*B. Public Factors*

Next, the Court further believes that a proper weighing of the relevant public factors under *Jumara* likewise supports a transfer. *Id.* In this regard, the most relevant public factor is that local courts have inherent interests in presiding over local controversies and this case involves a localized dispute arising from a collective bargaining agreement between a regional carpenters Union and an employer in the Middle District of Pennsylvania. *Id.* It appears that this is precisely the type of dispute that should be decided within a local forum, rather than in an adjacent District because this lawsuit raises genuine matters of public concern and possibly affects many citizens – all of whom are in the Middle or Eastern Districts. *Cf. Zanghi v. FreightCar Am., Inc*., Civ. A. No. 3:13-146, 2014 WL 130985 (W.D. Pa. Jan. 14, 2014) (McVerry, J.) ("Further counseling in favor of denying this transfer request is the public interest factor in having localized controversies decided at home. As provided above, the case involves retirees who allege that they are entitled to welfare benefits under collective bargaining agreements negotiated in this district. FreightCar maintains an administrative office in this district; the USW is headquartered in this district; and the plant where all of the retirees worked was located in this district.").

Although it is not necessarily quantifiable, given the nature of this dispute and the seriousness of the allegations, there should be significant public interest in this case in Harrisburg. Yet, there is simply no reason for the public in Pittsburgh to have any real interest in this Court deciding whether NGI and Kelly operated in a manner to avoid Novinger's collectively bargained obligations to pay fringe benefits to the Funds benefiting the carpenters Union in central Pennsylvania. In stark contrast, the potential ramifications of Plaintiff's claims for the Union members and the employees of Novinger's, NGI and Kelly are substantial and all

of these individuals are located around Harrisburg.  If successful, the Union members would benefit from the increased funding for their fringe benefits but if they lose, the fiduciaries representing them will have utilized their dues in pursuit of a failed lawsuit.  Based on the declaration of James Novinger, his companies face possible bankruptcy if they lose this lawsuit, the occurrence of which would negatively affect their employees and possibly put them out of work.  (Docket No. 6-1 at ¶ 28).  Even if the companies do not end up in bankruptcy, the case could have the effect of shifting future carpentry/drywall jobs from Kelly to Novinger's. Since this case potentially affects their respective livelihoods, any or all of these hard working carpenters (union and non-union) should have the opportunity to appear in court and observe proceedings if they so desire and it would be much more difficult for them to do so if this case was to proceed in Pittsburgh.   Thus, the localized interest factor heavily favors transfer.  *Cf.* *Zanghi*, 2014 WL 130985; *Dist. 65 Pension Plan,* 2007 WL 2066386.

The Court also considers the relative congestion of the competing Districts, which is neutral in the overall analysis and does not outweigh the other public factors favoring transfer. *See Armstrong*, 2014 WL 1452322, at *7.  The statistics provided to the Court demonstrate that the Middle District has a greater weighted civil filing score than this District.  (*See* Docket No. 12-3).  But, all of the District Judge seats in the Middle District are currently filled while this Bench is operating with three empty District Judge seats, and has been for more than a year. (*Id.*).   Plaintiff suggests that this venue should be favored due to its Alternative Dispute Resolution ("ADR") Program, (Docket No. 12); however, the Middle District has its own ADR system.   *See U.S. District Court, Middle District of Pennsylvania*, "Alternative Dispute Resolution", *available at:*  http://www.pamd.uscourts.gov/?q=alternative-dispute-resolution (last visited May 28, 2015).  In short, both are relatively busy Districts with ADR programs.  Further,

both Districts have able jurists that should be able to get the parties to trial in due course, rendering this factor neutral.

Finally, the remaining public factors regarding the enforceability of judgments, public policy considerations and familiarity of the Bench with relevant state law have no bearing on this venue dispute since both Districts are within the Commonwealth. *See Jumara*, 55 F.3d at 882-83 ("The fact that the two fora are adjacent districts of the same state also obscures the interest-of-justice analysis, which gives little reason to override the forum selection clause. None of the following factors exist: (1) a likelihood of an enforcement problem; [ … ] (3) a different policy preference in the two locales; (4) a disparity in the qualifications of the federal judges sitting in the two districts to pass on the same Pennsylvania law; or (5) an appreciable difference in docket congestion between the two districts."). But, this Court finds that the local interest in deciding this type of local controversy in the Middle District tips the scales of the public *Jumara* factors in favor of the requested transfer.

### C. Overall Weighing of Private and Public Factors

In summary, the Court holds that Defendants have met their burden to demonstrate that venue for this case is most appropriately transferred to the U.S. District Court for the Middle District of Pennsylvania given that the relevant private and public factors, individually and collectively, strongly favor such a transfer. *See Jumara*, 55 F.3d at 879-80. The Court recognizes that venue in this District is proper under the ERISA statute, 29 U.S.C. §1132(e)(2), but the above noted factors clearly outweigh the Plaintiff's choice of this venue. To this end, this Court believes that the instant case is more properly litigated and decided in the Middle District, where: nearly all of the contested activities occurred; most of the discovery will take place; the majority of the witnesses are located; and there is likely considerable local interest

from the public including numerous interested stakeholders in the litigation. Such a transfer is also consistent with the interests of justice and will promote the "just, speedy, and inexpensive determination of [these] proceeding[s]." FED. R. CIV. P. 1. Accordingly, an order transferring this case will be entered by the Court.

V. CONCLUSION

Based on the foregoing, Defendants' Motion to Transfer [6] is GRANTED and this matter will be transferred to the United States District Court for the Middle District of Pennsylvania, Harrisburg Division, forthwith. Insofar as Defendants also move to dismiss Count III, such matter shall be addressed by the transferee court. An appropriate Order follows.


*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge


Dated: May 29, 2015

cc/ecf: All counsel of record.